David Axelrod, M.D. Commissioner Department of Health
This is in response to your request for my opinion as to whether the provisions of Public Health Law, § 2805-d and CPLR, §§208, 214-a, 4401-a, and Rule 3403, dealing with various aspects of medical malpractice actions, apply to dentists.
These statutes are among those enacted or amended by chapter 109 of the Laws of 1975 in response to the perceived "medical malpractice insurance crisis" which consisted of the threatened lack of adequate medical malpractice insurance coverage in this State.
In an effort to reduce insurance rates, the Legislature enacted Public Health Law, § 2805-d, which limits the application of the doctrine of informed consent in "medical malpractice" actions against "medical practitioners". However, the Public Health Law does not define either "medical malpractice" or "medical practitioner" (see definitions contained in sections 2 and 2801).
Various provisions of the CPLR, including those about which you inquire, were amended in order to assure more prompt and fair disposition of medical malpractice actions and thereby reduce insurance rates (see Governor's Memoranda, New York State Legislative Annual 1975, p. 225). CPLR, § 208 was amended to place a ten year maximum extension on the Statute of Limitations in "medical malpractice" actions accruing to a person under a disability due to infancy. CPLR, § 214-a shortens the Statute of Limitations in "an action for medical malpractice" from three years to two years and six months. A trial preference is given to "an action to recover damages for medical malpractice" by CPLR Rule 3403. Section 4401-a provides that in "any cause of action for medical malpractice" based solely on lack of informed consent, the defendant's motion for judgment must be granted if the plaintiff failed to produce expert testimony. Unfortunately, like the Public Health Law, the CPLR does not contain a definition of "medical malpractice" (see definitions contained in section 105).
However, other statutory provisions enacted by chapter 109 as part of the "malpractice legislation" do define "medical malpractice" and specify to whom such provisions are to apply. The Medical Malpractice Insurance Association, composed of all insurers writing personal injury liability insurance in this State, was created by chapter 109 as a non-profit association which is required to provide a market for medical malpractice insurance within this State (Insurance Law, § 682). For this purpose, "medical malpractice insurance" means insurance against liability arising out of death or injury of any person "due to medical or hospital malpractice by any licensed physician or hospital" (Insurance Law, § 681(2)). Moreover, only licensed physicians or hospitals may apply to the Association for coverage (Insurance Law, § 685(1)).
A "medical and hospital malpractice fund" was created within the State Insurance Fund by chapter 109 to provide personal injury liability insurance for medical and hospital malpractice should the Association cease its underwriting (Workers' Compensation Law, § 76(2-a) (1)). For this purpose, "personal injury liability insurance" means insurance against liability arising out of the death or injury of any person "due to medical or hospital malpractice by any licensed physician or hospital" (Workers' Compensation Law, § 76(2-a) (2)).
In order to improve procedures for the professional discipline of physicians, the State Board for Professional Medical Conduct was created by chapter 109 within the Department of Health to conduct proceedings in connection with the regulation of professional conduct of the profession of medicine (Education Law, § 6500, Public Health Law, §230). The practice of the profession of medicine is limited to physicians (Education Law, § 6521, 6522). However, discipline of the members of the other professions, including dentistry, remains in the Education Department (Education Law, § 6500, 6600-6605).
It is clear that in enacting chapter 109, the Legislature was concerned with the threatened loss of malpractice insurance for hospitals and physicians and intended such chapter to apply to physicians alone and not to members of the other professions associated with medicine, such as nurses, dentists, etc. Since all the statutory provisions discussed above were enacted or amended by the same chapter, i.e., chapter 109, and for the same purpose, i.e., elimination of the malpractice insurance crisis, such statutes are in pari materia and must be interpreted and construed together and in light of each other (McKinney's Statutes, § 97;Baldine v Gomulka, 61 A.D.2d 419, 422 [Third Dept, 1978]). Therefore, although neither the Public Health Law nor the CPLR defines "medical malpractice", it is proper to infer from the general intent of chapter 109 that those statutes, about which you inquire, apply only to physicians and not to dentists.